[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of New Haven at New Haven. The plaintiff wife whose maiden name was Dowd, and the defendant husband were married in Springfield, Massachusetts, on the 25th day of August 1972. The plaintiff has resided continuously in the state of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably, without any reasonable prospects of reconciliation. There are no minor children issue of the marriage. No other minor children have been born to the plaintiff wife since the date of the marriage of the parties. The parties have one adult child age, 24. The defendant has a son from his first marriage Neither party has received state assistance.
The plaintiff was a nun and teaching at a high school in Massachusetts when she met the defendant. She retired from that position in 1973 and relocated to Connecticut with the defendant. The plaintiff abandoned the opportunity to be groomed as a principal after the defendant discouraged it. She remained out of the job market for approximately 13 years.
The plaintiff is a college graduate and has a fifth year certificate. She returned to teaching at age 44 and is currently teaching in the Cheshire School System. Her expected salary for 1998 is $54,000.00. She is in good health.
The defendant is a college graduate with a degree in biology/chemistry. Since the date of the marriage he has worked for a CT Page 3571 number of companies. The shortest time was for two years and the longest period of time was for six years. His salary went from a low of $17,000.00 in 1973 to a high of $175,000.00 in 1992 and $100,000.00 in 1993. The defendant started his own business in 1994. In 1995 and 1996 he earned in the low forties. In 1997 he earned $22,741.00 and he is expected to earn $28,000.00 in 1998. He expects to earn in the future between $30,000.00 and $50,000.00 per year. The defendant is in good health although he was hospitalized in 1975 for a chemical imbalance. He was treated and stabilized and he has been on medication from that time until the present.
In 1974 the plaintiff withdrew her pension funds of $9,000.00, which were used as a down payment on the parties first residence. The defendant had two pensions of approximately $34,000.00 which he liquidated in 1993. The parties had accumulated stocks, bonds and IRAs. The plaintiff inherited some stocks after her mother's death in 1990. In 1994 the defendant had approximately $140,000.00 in liquid assets. By 1996 that amount was reduced to zero. The money was used to pay for three years of college for the parties' daughter at a cost of $25,000.00 per year and to maintain the lifestyle of the parties.
The parties are in dispute as to the cause of the breakdown of their marriage. From the evidence presented, the court finds that both parties contributed to the breakdown of the marriage.
During the course of the marriage the parties did not communicate with each other. Both parties consumed alcohol and the defendant believed that the plaintiff had a drinking problem. He wanted her to seek alcohol counseling and she refused. She wanted him to seek marital counseling and he refused. The plaintiff threw objects at the defendant and he sometimes lost his temper.
The marriage started to deteriorate when the defendant quit his job and started his own business in 1994. The breakdown accelerated in the fall of 1996 after the parties went to a dinner in New York and on the return trip they had an altercation in the car. After that incident the defendant "left the bedroom" and in January 1997 he left the marital home. Six months prior to leaving the marital home, the defendant spent some week nights and weekends away from the marital home.
After the defendant left the marital home in January 1997, he CT Page 3572 lived in Massachusetts, New Hampshire and Maine. The plaintiff has continued to live in the marital home and pay the mortgage. The defendant currently lives in Maine and during 1997 he lived rent free, courtesy of one of his employers. In February 1997 the defendant directed his son from his first marriage to break into the marital home. In October, 1996 the defendant also requested and received the cash value of the life insurance policy from North Western Mutual Life in the amount of $1,121.00. He signed plaintiff's name on the check.
On January 21, 1997 the court ordered a distribution of some of the assets as follows: $10,000.00 to the defendant and $15,000.00 to the plaintiff for the payment of bills. On July 22, 1998 the plaintiff was found in contempt for dissipating $10,000.00 of the assets. The plaintiff was ordered to pay the defendant $7,500.00 and $1,000.00 towards the defendant's counsel fees by August 7, 1998.
The major assets considered for distribution are:
 1. The marital home valued at $215,000.00, with a mortgage of $90,000.00 and equity of $125,000.00.
2. The plaintiff's pension which will pay $1,100.00 at age 65.
 3. The stocks and bonds listed in Section 4E, Schedule A, of plaintiff's financial affidavit of 11/25/98 in the amount of $57,145.74.
 4. Deferred compensation listed in Section 4G of the plaintiff's financial affidavit of November 25, 1998 in the amount of $70,909.60.
The court has considered the provisions of 46b-82 regarding the issue of alimony, 46b-81(c) regarding the issue of property division and 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
 ORDERS A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declare to be single and unmarried. CT Page 3573
 B. BY WAY OF ALIMONY
1. The plaintiff is ordered to pay the defendant alimony in the amount of $125.00 per week.
2. The defendant is ordered to pay to the plaintiff alimony in the amount of $1.00 per year.
3. The alimony payments will terminate upon the earliest of the following contingencies: (a) the death of either party (b) the remarriage of either party (c) April 1, 2002. The defendant had earnings of $175,000.00 in 1992 and $100,000.00 in 1993. He became self-employed in 1994 and has projected his earnings in 1999 to be between $30,000.00 to $50,000.00. The defendant's projected earnings will be equal to the plaintiff's in the near future and he has the capacity to exceed her earnings, thereby eliminating the need for alimony.
4. Alimony is non-modifiable as to term. The provisions of § 46b-86(a) and § 46b-86(b) are applicable.
5. The plaintiff shall cooperate with the defendant in order for him to obtain COBRA benefits under her place of employment for the full statutory period or until he obtains medical insurance through his own employment, whichever comes first. The plaintiff shall be responsible for one half of the cost of such coverage the total cost not to exceed $450.00 per year.
 C. BY WAY OF PROPERTY ORDERS.
1. The family home is to be sold and after the payment of closing costs, real estate agents fee and the first mortgage, the proceeds are to be divided equally between the parties. The court retains jurisdiction over any dispute that may arise involving the sale of the family home.
2. Alternatively, the plaintiff wife shall pay to the defendant the sum of $62,500.00 in exchange for his interest in the family home.
3. Until such time as the family home is sold, the plaintiff has the right to exclusive possession of the family home. During the period she resides there, she is to keep the mortgage payments current. CT Page 3574
4. All of the furniture and furnishings in the family home are awarded to the plaintiff except the double diamond ring the defendant inherited from his mother which shall be turned over by agreement to the adult daughter, issue of the marriage.
5. The insurance policy proceeds in the amount of $1,121.00 previously cashed in by the defendant, is awarded to him.
6. All jewelry given to the plaintiff by the defendant is awarded to the plaintiff.
7. The 1990 Acura Legend is awarded to the defendant. Plaintiff shall surrender the title within 30 days of judgment.
8. The plaintiff's State of Connecticut Teacher's Retirement Plan shall be divided such that the defendant shall receive 30% of the value of said plan as of the date of dissolution of the marriage together with any gain and losses on her portion of said plans until said dissolution. The plaintiff shall choose a joint and survivor annuity option if available such that the defendant will receive his portion of said benefit for his lifetime.
The court shall retain jurisdiction for purposes of approving any Qualified Relations Domestic orders necessary to effect the division of the pension plan.
9. All stocks, bonds, mutual funds listed in Item #4E Schedule A on the plaintiff's financial affidavit of 11/27/98 is awarded to the plaintiff.
10. The deferred compensation listed in item 4G on the plaintiff's financial affidavit of November 27, 1998 as 403B — Franklin in the amount of $18,757.25 and the $7,000.00 is awarded to the plaintiff.
11. The deferred compensation listed in item 4G on the plaintiff's financial affidavit of November 27, 1998 4g as IRA-WFFCU in the amount of $30,859.41 and TSA Western National Life Insurance in the amount of $14,293.00 is awarded to the defendant.
12. The tax liability listed on the plaintiff and defendant's affidavit shall be shared equally.
13. The liability to Key Bank USA listed on the plaintiff and CT Page 3575 defendant's affidavit shall be shared equally.
14. All other liabilities shown on the plaintiff's financial affidavit shall be the responsibility of the plaintiff and she is to hold the defendant harmless therefrom.
15. All other liabilities shown on the defendant's financial affidavit shall be the responsibility of the defendant and he is to hold the plaintiff harmless therefrom.
 D. BY WAY OF ATTORNEY'S FEES
No attorney's fees are awarded in favor of either party.
 E. MISCELLANEOUS ORDERS
1. The parties are to exchange copies of their federal and state income tax returns by certified mail and return receipt or registered mail with return receipt, within fifteen days after such returns have been filed for so long as there is any outstanding alimony order or any outstanding arrearage from such order.
2. Any civil action relating to the insurance claim is merged into the decree of dissolution. The plaintiff will hold the defendant harmless from any court claims filed against him for those proceeds.
3. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
Crawford, J.